## CLYMER v. UNITED STATES.
### No. 111.

Circuit Court of Appeals, Tenth Circuit.
Feb. 5, 1930.

582

Kenaz Huffman, of Denver, Colo. (Clarence L. Ireland and Robert E. Winbourn, both of Denver, Colo., on the brief), for appellant.

Ralph L. Carr, U. S. Atty., of Antonito, Colo.

Before COTTERAL, PHILLIPS and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

The appellant was convicted on three counts of an indictment for a fraudulent use of the mail, in violation of section 338, tit. 18, of the U. S. Code (18 USCA § 338). The errors assigned on appeal are the denial of an application to take depositions and to adjourn the trial for the purpose, and the refusal both to direct a verdict for appellant and to give other instructions to the jury.

The indictment was returned in May, 1928, and appellant pleaded not guilty in the following August. Four days previous to the trial, set for October 9, 1928, he filed a verified petition for a dedimus potestatem in order to obtain the depositions of nine named witnesses at Chicago, representing that their testimony, which was briefly stated, was material, relevant, competent, and necessary to meet the proof of the government, and he had not and could not secure the funds to pay the expense of the attendance of the witnesses. The petition was denied because it did not comply with Rule 8 of the District Court, requiring ten days' notice thereof, and the interrogatories were not served with it. One day before the trial, appellant presented a verified motion for a continuance to allow the taking of the depositions, attaching affidavits of the witnesses containing their proposed testimony, and alleging that he could not safely proceed to trial for want of their testimony, and that he was without funds with which to procure their attendance. This motion was also denied.

The petition for the dedimus was based on sections 643 and 644 of title 28, U. S. Code (28 USCA §§ 643, 644). The latter provides: "In any case where it is necessary, in order to prevent a failure or delay of justice, any of the courts of the United States may grant a dedimus potestatem to take depositions according to common usage. * * *" Section 643 authorizes the taking of depositions in the federal courts according to the mode prescribed by the local state laws.

It has been held that section 644 applies to criminal cases and that "common usage" means the prevailing practice in the local state courts. United States v. Cameron (C. C.) 15 F. 794. We may assume that decision is sound without committing the court definitely on the subject. The only statute of Colorado claimed to be applicable is section 384, of the Civil Code, Comp. Laws 1921, p. 171, which provides that depositions of witnesses out of the state may be taken under a commission, after five days' notice, upon application accompanied by interrogatories, also that leave may be granted in the sound discretion of the court to examine such witnesses orally upon notice and application supported by affidavit, where good cause is shown. That section and the U. S. Code sections leave ample room for the adoption of court rules as a safeguard against the abuse of the privilege. Section 731, tit. 28, of the U. S. Code (28 USCA § 731), authorizes the adoption by the District Courts of rules regulating matters of practice, which are consistent with the rules of the Supreme Court. Such rules are subject to the limitations that they may not enlarge or restrict jurisdiction, or abrogate or modify the substantive law. Washington-Southern Co. v. Baltimore & P. S. Co., 263 U. S. 629, 44 S. Ct. 220, 68 L. Ed. 480.

We do not doubt the validity of the rule of the District Court requiring notice of an application for a dedimus or the power of the court aside from a rule to impose the condition of notice and the filing of interrogatories. There was no error therefore in refusing the application in this case. The motion for a continuance lacked a showing of diligence in preparation for trial, which is essential to prevent the disarrangement of trial dockets and consequent injury or expense to adverse parties. The refusal to postpone the trial was well within the discretion of the court, and is also not available as error in this case.

In considering the refusal of the court to direct a verdict for appellant, we first notice the scheme charged in the indictment, but only in condensed form, owing to the prolixity of the averments.

Generally stated, it was a scheme to defraud certain named persons and others owning patents, by false representations as to his ability and purpose to render services and make investigations and reports regarding and for the sale of their patents, in consideration of their remittances of fees and expense money. He was to obtain the names

of the patentees from the Patent Gazette, and in the name of his stenographer, V. G. Martin, pretending to be engaged in the loan, real estate, and patent business, at Denver, Colorado, write these parties Martin might be interested in the purchase of their patents, and would be glad to have further information, lowest price, and a copy of the patents, and, in response to their answers, write them Martin had gone over the information and decided he could use the invention, as the price seemed fair, barring infringement and competition, adding that, if they cared to take up the matter with Clymer, at his address in Denver, the writer would be glad to accept his report and investigation, recommending him as having had many years' experience in patent matters, as thoroughly capable and dependable, stating the writer would accept his judgment, adding his fee for investigation would be reasonable, and suggesting the addressees get in touch with him, etc. Then follows the correspondence between the defendant and these patrons, containing various representations offering new and valuable service to patrons, soliciting the payment of his fees, and, if not paid, then the other half on complaint to Martin to be paid by Martin, and further requesting expense money for trips of himself and a purchaser for the purpose of sales and investigation to Chicago and Washington, offering in instances to pay half of such expense, with a design to obtain the money of the patrons without giving anything of value in return.

The reference by counsel to the evidence is scant and of little assistance to this court. Our examination of it convinces us it was sufficient to withstand the motion to direct a verdict for appellant. There was the correspondence, including that by which remittances were obtained by him from patrons. The issue was whether the representations constituted a fraudulent scheme. Without reviewing the evidence in detail, we conclude it wa ranted a finding by the jury that appellant made proposals to render beneficial services to patrons which he did not intend to meet and he did not believe were within the reach of fulfillment by him. But the inquiry need not be extended beyond the letters of his stenographer, Miss V. G. Martin.

She testified to writing the letters under her name at his instance, upon letterheads he furnished, displaying on the margin, "real estate, loans, patents, business property," some of them at the number of a salesroom on Seventeenth street, and others at appellant's address on Gaylord street, in Denver.

She was not interested in business, but was employed solely as a stenographer. The names of the patentees were obtained and the letters were written as set out in the indictment.

Appellant was not a witness at the trial. Mr. Nelson, a post office inspector, testified to interviews with him. Appellant first claimed V. G. Martin was a young man he had known two or three years, thought to be selling patents, and once lived at appellant's home, but had gone to Los Angeles. Asked why he called for mail at the address of Martin, he said it was at Martin's request in order to forward his mail. He said he did not visit clients at Chicago to sell them patents, and attended an automobile show at that city. On another occasion he introduced his stenographer. Later, when asked about his first conversation, he answered that he was caught unawares and did not know which way to turn, and his statement regarding Martin's mail "was just another of my foolish acts for which there is no explanation."

■ A claimed deficiency of proof is that no money was directly obtained on the letters of the stenographer. But the test of the fraud charged was not whether they solely induced the payments. It would be a fraudulent scheme thus to decoy the patentees into appellant's confidence so that by his further appeals their money might be obtained. This might well be shown by a false pretense that an independent person was engaged in business and would buy the inventions on his judgment, at the same time commending him. The jury was warranted in finding that the letters were a deceit practiced by appellant at the inception of his plans and that it constituted a fraudulent scheme, whether it alone was effectual to consummate the fraud. It is not an element of the offense under the statute that a fraudulent scheme is successful.

A scheme, as charged, being thus shown by the evidence it was sufficient as to that element of the offense, without proof of a fraudulent scheme in any other respect. Silkworth v. United States (C. C. A.) 10 F. (2d) 711; Mathews v. United States (C. C. A.) 15 F.(2d) 139; Kaplan v. United States (C. C. A.) 18 F.(2d) 939; Sasser v. United States (C. C. A.) 29 F.(2d) 76, 77.

■ While error was assigned upon the refusal of four requests for instructions, it is urged as to only one of them, which was as follows: "You are to presume the existence of no fact unless it has been testified to. You are to found your verdict upon the testimony

by the witnesses upon the witness stand, and are not to supplement it with some other fact which you think exists, but which has not been proved." . .

This request, as a whole, was objectionable because it was calculated to confine the jury in arriving at the facts to the express testimony of the witnesses. It was therefore properly refused.

In our opinion, the convictions on the three counts of the indictment should be, and they are accordingly, affirmed.