## STANDISH v. GOLD CREEK MINING CO.*

### No. 8485.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1937.

H. L. Maury, A. G. Shone, and W. E. Coyle, all of Butte, Mont., for appellant.

William Meyer, of Butte, Mont., and S. P. Wilson, of Deer Lodge, Mont., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

An able petition for rehearing points out that dictum in our opinion may be construed to assert that, if a suit be filed in a division or district other than that in which

*Writ of certiorari denied 58 S.Ct. 476, 82 L.Ed. —.

the defendant resides, the filing confers on the court no jurisdiction of the subject matter. The petition does not alter our decision, but the matters discussed are of sufficient importance to warrant clarification. The opinion is amended to read as follows:

. This is an appeal by the plaintiff from a judgment dismissing an action at law for want of jurisdiction over the person of the defendant.

Plaintiff Standish, a citizen of Illinois, brought an action against Gold Creek Mining Company, a corporation of Montana, having its principal place of business at Deer Lodge, Powell county, in that state. The complaint included a count for the reasonable value of services rendered, amounting to more than $10,000, and one upon an account stated in the sum of $17,376.68.

Defendant then entered what was denominated a "special appearance," moving the court to quash, vacate, and set aside the service of summons by reason of lack of jurisdiction over the person of the defendant. The ground assigned was that the district of Montana is, by rule of court, divided into several divisions; that this action was filed in the Butte division, whereas defendant is a resident of the Helena division, and that the court, in an action brought in one division, has no jurisdiction over a single defendant residing in the other. With the motion to quash, there was filed an affidavit of counsel stating that defendant had a good defense on the merits. There was no motion to dismiss the action.

The court granted the motion to quash the service. On its own motion, it then ordered a dismissal of the action, without prejudice to recommencing it in the Helena division of the court, the residence of the defendant. Judgment was entered on the order. Plaintiff appeals, assigning as error (1) the dismissal of the action, (2) the quashing of the service.

In the absence of a motion to dismiss, the court erred in dismissing the action. Even if the divisions of the district were deemed created, the court had jurisdiction of the action itself, and the right to oust it was a personal privilege which defendant could waive by appearance. Camp v. Gress, 250 U.S. 308, 311, 39 S.Ct. 478, 63 L.Ed. 997; Ex parte Schollenberger, 96 U.S. 369, 378, 24 L.Ed. 853.

The remaining question is whether the court obtained jurisdiction in personam

over the defendant by the service on him. This question is dependent on the right of the District Court of Montana to divide the state into divisions within the meaning of section 53 of the Judicial Code (March 3, 1911, 36 Stat. 1101, 28 U.S.C.A. § 114) providing in part: "When a district contains more than one division, every suit not of a local nature against a single defendant must be brought in the division where he resides."

The District Court rule purporting to create the division is: "Rule 9–2. The district of Montana is hereby divided into the Butte, Helena, Great Falls, Missoula and Billings Divisions. The Butte Division is composed of the territory in the counties of Silver Bow, Madison, Beaverhead and Deer Lodge. The Helena Division is composed of the territory in the counties of Lewis & Clark, Broadwater, Meagher, Gallatin, Park, Jefferson and Powell. * * *"

Obviously, if the District Court was empowered to enact rule 9–2, and if the congressional statute refers to divisions such as those created by that rule, then the court below was correct in granting the motion to quash the service and denying itself jurisdiction over the person of the defendant. If, on the other hand, it had no power to create such divisions, the action could be brought and the defendant served at any place in the district.

The rule-making power of the district courts flows from Rev.St. § 918 (28 U.S.C.A. § 731): "The district courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the Supreme Court * * * make rules and orders directing the returning of writs and processes, the filing of pleadings, the taking of rules, the entering and making up of judgments by default, and other matters in vacation, and otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

The statute says nothing about jurisdiction either over the person or the action. It authorizes the courts to make rules of practice governing the method by which jurisdiction shall be exercised. Yet rule 9–2 limits, what would otherwise. be district-wide right to a jurisdiction in personam in all cases, to those brought in the division of defendant's residence, and likewise gives to the defendant the right to oust the court of jurisdiction of the suit itself, if brought anywhere save in the confined area.

■ It is fundamental that a rule of court cannot enlarge or restrict jurisdiction given by a statute. In Venner v. Great Northern Ry., 209 U.S. 24, 33, 34, 35, 28 S.Ct. 328, 330, 52 L.Ed. 666, plaintiff brought a suit in equity against a corporation of which he was a shareholder. His complaint did not allege that at the time the wrongs complained of were committed plaintiff was a shareholder. Equity Rule 94 of the Supreme Court required such an allegation in a suit such as the one brought. The contention was made that the failure so to allege defeated the jurisdiction of the federal court. In reply the Supreme Court said: "It has already been shown that the plaintiff * * * did not bring this case within the terms of the 94th rule in equity. * * * It is argued that a compliance with that rule is essential to the jurisdiction, and that a controversy of the general nature contemplated by the rule is beyond the jurisdiction of the circuit court. * * * But this argument overlooks the purpose and nature of the rule. * * * If a controversy of this general nature is brought in the circuit court and the necessary diversity of citizenship exists, but, upon the pleadings or the proof, it appears that the plaintiff has not shown a case within * * * the rule of court * * * the bill should be dismissed for want of equity, and not for want of jurisdiction. * * * *The jurisdiction of the circuit court is prescribed by laws enacted by Congress in pursuance of the Constitution, and this court by its rules has no power to increase or diminish the jurisdiction thus created.*" (Italics supplied.)

What is true of Supreme Court rules applies a fortiori to those created by the District Court. And there is ample direct authority to the effect that a District Court cannot enlarge or restrict its jurisdiction by rules. Washington-Southern Nav. Co. v. Baltimore & Phila. S. S. Co., 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480; Clymer v. U. S. (C.C.A.10) 38 F. (2d) 581, 582; Woodbury v. Andrew Jergens Co. (C.C.A.2) 61 F.(2d) 736, 738.

■ It would be sufficient to dispose of the question of quashing the service, therefore, to point out that a court rule creating divisions in a district, which rule is interpreted to limit the jurisdiction of the court in personam or of the action itself, cannot be within the rule-making power; and that

Congress, in requiring suits to be brought in the division of the defendant's residence, could not have contemplated a division created by rule of court in excess of rule-making power delegated by Congress.

There is an additional consideration equally persuasive against the defendant in this case. Assuming that rule 9-2 was otherwise within the power of the District Court to promulgate, it would nevertheless be invalid by reason of conflict with the laws of Congress.

Section 51 of the Judicial Code, as amended (28 U.S.C.A. § 112), grants to parties entitled to invoke federal jurisdiction the right to bring suit anywhere in the *district* where suit is properly brought, with certain exceptions. One of these exceptions is section 53, supra, providing that in the case of divisions an action against a single defendant must be brought in the division of his residence.

From time to time, Congress has created judicial districts. Within some districts it has created divisions and in others the place of filing is as wide as the district. 36 Stat. 1105, et seq., as amended 28 U.S.C.A. § 141 et seq. Sections 51 and 53 were enacted as part of the Judiciary Act of March 3, 1911, 36 Stat. 1087, et seq., as amended 28 U.S.C.A. §§ 112, 114. Chapter 5 of this same Act, as amended (28 U.S.C.A. § 141 et seq.), enacted comprehensive provisions dividing the districts into divisions. Section 92 (36 Stat. 1118, as amended 28 U.S.C.A. § 172) provided that "The State of Montana shall constitute one judicial district, to be known as the district of Montana." It then goes on to prescribe for the district of Montana when and in what cities terms of court shall be held. Nothing is said about divisions.

It seems clear that it was the intent of the Congress that Montana should have no divisions, that a suit could be brought anywhere in the district against a resident of the district, and that the court could obtain jurisdiction over the defendant by service upon him within the district.

Such being the case, a rule of court creating divisions by which the defendant can limit the court's jurisdiction clearly restricts the jurisdiction directly conferred by Congress. This is true regardless of when the court rule was adopted.

The intent of Congress in this matter is made still clearer by a consideration of the legislative history of the district of Montana, well summarized in the opinion of the District Judge in this case.

By section 21 of the Act of February 22, 1889 (25 Stat. 676, 682), it was provided that, when Montana should be admitted to the Union, it should constitute one federal judicial district. By the Act of July 20, 1892 (27 Stat. 252), a portion of the district was made into the "Southern Division of the District of Montana." However, on July 7, 1898, this subdivision was expressly repealed, and the state became again an undivided district (30 Stat. 685). All subsequent acts relating to this district have made provision for terms and places of court, but at no time have created divisions. April 27, 1904, 33 Stat. 313; Judiciary Act of 1911, supra; Act of July 3, 1926, 44 Stat. 825 (28 U.S.C.A. § 172).

It is clear, therefore, that at least from and after July 7, 1898, Congress has seen fit to make jurisdiction within the entire district of Montana without power in the defendant to oust it, and that a rule of court directly contrary to this determination cannot stand.

No case cited by the parties bears directly upon the issue here. However, there are expressions in some of them which are distinctly in accord with the conclusion we have reached. Thus in Rosecrans v. U. S., 165 U.S. 257, 262, 17 S.Ct. 302, 41 L.Ed. 708, the Supreme Court, interpreting the Act of 1892, supra, creating divisions in Montana, held that the district-wide jurisdiction over criminal cases vested in the courts of first instance could not be cut down by the creation of divisions, unless the intent to do so was made manifestly clear.

In Jenner v. Murry (C.C.A.5) 32 F.(2d) 625, 626, suit was brought to enjoin the enforcement of a default judgment rendered by the District Court for Florida in the Miami division created by rule of court. It was contended that the original process commenced in Jacksonville, another division, and hence that the judgment in Miami was invalid. The court said: "The statute does not create divisions of the Southern district of Florida. * * * It follows that the provision as to the division in which a suit not of a local nature must be brought, where a district contains more than one division (28 U.S.C.A. § 114) is not applicable to this case."

Barfield v. Zenith Tire & Rubber Co. (D.C.N.D. Ohio) 9 F.(2d) 204, is cited by appellee as supporting its contention. It

is sufficient to point out that the divisions of the districts of Ohio were created by statute and not by rule of court. 28 U.S.C.A. § 181.

For the reasons stated, the judgment of dismissal must be reversed. The suit properly was brought and the summons properly could be served anywhere in the district and jurisdiction obtained over the person of the defendant.

Reversed.